13-20265

IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

◆━◆

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

ASHLEY NICOLE RICHARDS, BRENT JUSTICE,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(CRIMINAL NO. H-12-731)

## BRIEF OF *AMICUS CURIAE* THE HUMANE SOCIETY OF THE UNITED STATES IN SUPPORT OF APPELLANT

Jonathan R. Lovvorn
Aaron Green
Kimberly Ockene
THE HUMANE SOCIETY OF THE
    UNITED STATES
2100 L Street, NW
Washington, DC 20037
(202) 676-2325

J. Scott Ballenger
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

S. Amy Spencer
Samuel B.C. de Villiers
LATHAM & WATKINS, LLP
885 Third Avenue, Suite 1000
New York, New York 10022
(212) 906-1200

*Counsel for Amicus Curiae
The Humane Society of the United States*

Dated: August 30, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE ............................................................. v

SUMMARY OF ARGUMENT .................................................................... 1

BACKGROUND ........................................................................................ 2

    Crush Videos .................................................................................... 2

    The Original § 48 ............................................................................. 6

    The Supreme Court's Holding in *United States v. Stevens* ............ 7

    The 2010 Amendments to § 48 ....................................................... 8

ARGUMENT .............................................................................................. 9

I.      THE DISTRICT COURT ERRED BY ENTERTAINING A
        FACIAL CHALLENGE TO § 48 .................................................. 9

II.    CRUSH VIDEOS ARE CONSTITUTIONALLY OBSCENE ..................... 11

III.   CRUSH VIDEOS ARE SPEECH INTEGRAL TO CRIMINAL
        CONDUCT .................................................................................. 13

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brockett v. Spokane Arcades, Inc.*,
  472 U.S. 491 (1985) .......................................................................................9

*Brown v. Entertainment Merchants*,
  131 S. Ct. 2729 (2010) ................................................................................15

*Chaplinsky v. New Hampshire*,
  315 U.S. 568 (1942) .....................................................................................13

*Ginzburg v. United States*,
  383 U.S. 463 (1966) .....................................................................................11

*Hamling v. United States*,
  418 U.S. 87 (1974) .........................................................................................9

*Miller v. California*,
  413 U.S. 15 (1973) ................................................................................ 9, 11

*Mishkin v. New York*,
  383 U.S. 502 (1966) .....................................................................................11

*Morissette v. United States*,
  342 U.S. 246 (1952) .......................................................................................9

*New York v. Ferber*,
  458 U.S. 747 (1982) ........................................................................... 14, 15

*Roth v. United States*,
  354 U.S. 476 (1957) ............................................................................... 9, 11

*United States v. 12 200-Ft. Reels of Super 8mm Film*,
  413 U.S. 123 (1973) .......................................................................................9

*United States v. Davidson*,
  283 F.3d 681 (5th Cir. 2002) ....................................................................12

*United States v. McDowell*,
  498 F.3d 308 (5th Cir. 2007) ....................................................................12

*United States v. Orito*,
   413 U.S. 139, 145 (1973) ......................................................................9

*United States v. Richards*,
   2013 U.S. Dist. LEXIS 55383 (S.D. Tex. 2013)..................................14

*United States v. Stevens*,
   130 S. Ct. 1577 (2010) ................................................................ *passim*

*United States v. Thomas*,
   74 F.3d 701 (6th Cir. 1996) ...............................................................12

*Ward v. Illinois*,
   431 U.S. 767 (U.S. 1977) ...................................................................12

## STATUTES

18 U.S.C. § 48............................................................................... passim

18 U.S.C. § 48(a)(1).............................................................................8

18 U.S.C. § 48(e)(1).............................................................................8

18 U. S. C. § 1462 ................................................................................9

19 U. S. C. § 1305 (a) ..........................................................................9

## RULES

5th Cir. R. 29.2.................................................................................. iv

Fed. R. App. P. 29 ............................................................................. iv

## LEGISTATIVE MATERIALS

145 Cong. Rec. 25898 (1999) ..............................................................7

145 Cong. Rec. H10267 (1999) ...........................................................5

156 Cong. Rec. S8202-04 ..................................................................15

H.R. Rep. No. 106-397 (1999)..............................................................7

H. R. 1887, Statement of President William J. Clinton,
   34 Weekly Comp. of Pres. Doc. 2557 (Dec 9, 1999)............................6

# OTHER AUTHORITIES

Julia Reischel, *Crush Me, Kill Me*, Broward/Palm Beach New Times,
Apr. 20, 2006 ........................................................................................3

Letter from David LaBahn, CEO, Assoc. of Prosecuting Attorneys,
Sept. 15, 2010 ......................................................................................7

Punishing Depictions of Animal Cruelty and Federal Prisoner Health Care
Co-Payment Act of 1999 ......................................................................2

Testimony of Nancy Perry, Senate Committee on the Judiciary, *Prohibiting
Obscene Animal Crush Videos in the Wake* of *United States v. Stevens*,
(Sept. 15, 2010), 111th Cong. 108 ............................................... 4, 5, 6

Testimony of Professor Cheryl Hanna, Senate Committee on the Judiciary,
*Prohibiting Obscene Animal Crush Videos in the Wake of United States v.
Stevens* (Sept. 15, 2010), 111th Cong. 108 ................................... 10, 11

Testimony of Professor Kevin Volkan, Senate Committee on the Judiciary,
*Prohibiting Obscene Animal Crush Videos in the Wake of United States v.
Stevens* (Sept. 15, 2010), 111th Cong. 108 .......................................2, 3

Testimony of Professor Nathaniel Persily, Subcommittee on Crime,
Terrorism, and Homeland Security of the House Committee on the
Judiciary, *United States v. Stevens: The Supreme Court's Decision
Invalidating the Crush Video Statute* (May 26, 2010), 111th Cong. 129 ............10

Testimony of Professor Stephen Vladeck, Subcommittee on Crime,
Terrorism, and Homeland Security of the House Committee on the
Judiciary, *United States v. Stevens: The Supreme Court's Decision
Invalidating the Crush Video Statute* (May 26, 2010), 111th Cong. 129 ............10

Testimony of J. Scott Ballenger, Subcommittee on Crime, Terrorism, and
Homeland Security of the House Committee on the Judiciary, *United
States v. Stevens: The Supreme Court's Decision Invalidating the Crush
Video Statute* (May 26, 2010), 111th Cong. 129................................10

## INTEREST OF AMICUS CURIAE[1]

Pursuant to Federal Rule of Appellate Procedure 29 and Fifth Circuit Rule 29.2, The Humane Society of the United States ("HSUS") submits this brief *amicus curiae* in support of the United States.  HSUS is the nation's largest non-profit animal protection organization with millions of constituents.  HSUS's mission is to protect animals through legislation, litigation, investigation, education, advocacy, and field work.  HSUS assists state and federal law enforcement officials in the investigation and prosecution of animal cruelty, and has participated as *amicus* in numerous cases raising animal protection issues.  All parties have consented to this filing.

---

[1]  Pursuant to Federal Rule of Appellate Procedure 29, *amicus* states that no counsel for any party authored this brief in whole or in part, and no person or entity other than *amicus* made a monetary contribution to the preparation or submission of the brief.  Counsel of record for all parties were notified prior to filing and have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

Congress first enacted 18 U.S.C. § 48 in 1999 to provide law enforcement with a vital tool to combat the most abhorrent acts of animal cruelty.  In 2010, the Supreme Court struck down § 48 as invalid under the First Amendment, finding the language overbroad because it could be read to criminalize hunting and agricultural videos.  The Court suggested that a statute clearly limited to extreme depictions of animal cruelty would raise entirely different constitutional issues.

Congress responded with a new version of § 48 that addressed the Court's overbreadth concerns by targeting one especially heinous form of animal cruelty— animal crush videos—and by requiring that the materials must be "obscene."  These videos feature living animals being intentionally tortured and killed for the sexual gratification of a deviant segment of the population.

The District Court below held that the amended § 48 remains facially unconstitutional, purportedly because the materials it prohibits "straddle a line between obscenity and speech integral to criminal conduct," either of which would be unprotected, "but cannot be fairly categorized as either one."  The court erred.

First, Section 48 cannot be facially unconstitutional for exceeding the bounds of obscenity doctrine when the statute explicitly requires that the material must be "obscene."  If the court thought that the particular materials underlying

this prosecution were constitutionally protected then it should have held that the plain language of the statute bars this particular prosecution.

Second, these materials are not constitutionally protected. The district court thought that animal crush videos cannot be constitutionally obscene because they do not portray "sexual conduct." That holding either misunderstands the *Miller* test for obscenity, or misunderstands what crush videos *are*. Supreme Court precedent instructs that when material is specifically created for a sexually deviant group, what constitutes sexual conduct must be judged from the perspective of that group. Crush videos also are unprotected because the underlying criminal acts are intrinsically linked to the prohibited depiction, and the government's interest in preventing the crime far outweighs the *de minimis* value of the speech proscribed.

## BACKGROUND

### Crush Videos

Crush videos are a form of pornography that appeals to people with sexual paraphilias for sexual sadism and sexual masochism.[2] "Paraphilias are sexual

---

[2] *See* Written Testimony of Kevin Volkan, Chair & Professor of Psychology, California State University Channel Islands, Camarillo, CA (hereinafter "Volkan Testimony"), Senate Committee on the Judiciary, "Prohibiting Obscene Animal Crush Videos in the Wake of *United States v. Stevens*," (Sept. 15, 2010), 111th Cong. 108 at 93-94 (hereinafter "Senate Hearings"), available at http://www.gpo.gov/fdsys/pkg/CHRG-111shrg64411/pdf/CHRG-111shrg64411.pdf; *see also* Punishing Depictions of Animal Cruelty and Federal Prisoner

disorders that involve recurrent and intense sexually arousing fantasies, urges or behaviors related to non-human objects, non-consenting persons or children, and the suffering and/or humiliation of oneself or a partner." Volkan Testimony, Senate Hearings at 94.

The "crush paraphilia can be thought of as an extreme version of a 'foot fetish' where the individuals with the paraphilia derive sexual pleasure from watching the object of their desire crush a living creature to death." *Id.* Crush fetishists are part of "a fringe sexual group that finds erotic the sight of women's feet smashing small creatures . . . ."[3] This is a form of sexual masochism—the "feeling of sexual arousal or excitement resulting from receiving pain, suffering, or humiliation." Volkan Testimony, Senate Hearings at 95. The "masochists identify with the animals being tortured and killed, actually seeing themselves as the animal being crushed, and these individuals obtain sexual gratification through this identification." *Id.* The "ultimate sexual release occurs with death, but the benefit of killing an animal [rather than the fetishist himself] is that the crush practitioners can return the next day for another opportunity to fulfill their sexual needs." *Id.* at 96-97.

---

Health Care Co-Payment Act of 1999: Hearing before the Subcomm. on Crime of the H. Comm. on the Judiciary, 106th Cong. 41 (1999).

[3] Julia Reischel, *Crush Me, Kill Me*, Broward/Palm Beach New Times, Apr. 20, 2006, available at http://www.browardpalmbeach.com/2006-04-20/news/crush-me-kill-me/full/.

One crush fetishist, Bryan Loudermilk, died after someone drove a car over his stomach in what the New Times called "one of the most extraordinary sex acts to occur on Florida soil." *Crush Me, Kill Me*. Police believed that Loudermilk "was trying to find the ultimate fusion of his two desires," an extreme foot fetish that made him aroused by being stepped on (or "trampled") by women, and a crush fetish, in which he transferred his desire to be crushed to animals being crushed by female feet. *Id.* For men like Loudermilk, crush videos are a way to experience by proxy their "version of the ultimate sexual act: being squished to death by the feet of a woman." *Id.* Another couple who engage in the crush fetish consider it "foreplay," and when a journalist was allowed to stand on the back of the man, she observed that he "was clearly embarrassed at letting me perform what amounted to a sex act with him in front of his girlfriend . . . ." *Id.*

Crush videos usually feature "a scantily clad, high-heeled woman [or young girl] stomping, squishing, and impaling animals to death" for the titillation of viewers with a sexual fetish for crushing animals.[4] Like a bondage video, the "animals are often secured [to the ground] so they cannot escape, but are free enough to move so that their writhing in agony is clear to the viewer." *Id.* The women in these videos talk to the animals in sexual ways, as if the animals were

---

[4] *See* Testimony of Nancy Perry, Senate Hearings at 3.

human, playing the part of the dominatrix. *Id.* Sometimes the women, or men, use their buttocks to crush the animal rather than their feet. *Id.* at 5. Crush videos are available through pornographic websites that offer them alongside sadistic and masochistic videos, bondage videos, and excrement videos.[5]

The creation of crush videos necessarily involves the infliction of horrific pain on defenseless animals. As one Congressman explained, "I do not believe in my entire time in Congress, I have ever seen anything . . . as repulsive as [crush videos]. And I doubt anyone else who had to watch it would say anything [different]." 145 Cong. Rec. H10267 (daily ed. Oct. 19, 1999) (statement of Rep. McCollum). Just a few of the thousands of videos available serve as a living record of the torture inflicted on these creatures:

- Arleneunggoy_preview2 – a provocatively clad girl wearing a very short and tight patent leather mini skirt and stiletto heels is poking her sharp heel through the eye socket of a small monkey;

- Buttpre – a smiling girl takes a small puppy and sits on him (butt crush). The puppy screams;

- Anakiraygoattort_preview2 – a girl is cutting the testicles off of a live goat with a knife;

- Cherryloumataaso – preview – a smiling girl in stilettos pokes her sharp

---

[5] *See* www.heavy-r.com/free_porn/animal-crush.html (last visited Aug. 13, 2013); motherless.com (video called 3 girls crushing puppies on the same screen with excrement and bondage videos) (last visited Aug. 13, 2013), www.xxxfetish-media.com, www.lethal.crushfetish.net, www.extreme.crushfetish.net, www.sexycrush.com, and other similar sites. *See* Written Testimony of Nancy Perry, Addendum A, Senate Hearings at 56-83.

heel through a live dog's eye socket.  The dog's front legs are tied behind his back and his mouth is tied shut, but he screams and screams in horrendous pain as the girl relentlessly stabs her heel through his eye socket.  At one point, her heel goes all the way in and makes a cracking sound, but the dog is still alive and screaming;

- Altheacrushsexynighties_preview – a young girl provocatively clad in a sexy, short negligee is stepping barefoot on a dog whose mouth and legs are tied tightly with wire.  One can see the pain in the dog's eye as he is being trampled on; and

- A woman slowly crushing to death a speckled kitten.  The kitten, secured to the ground, watches and shrieks in pain as a woman thrusts the sharp point of her high-heeled shoe into its body, slams her heel into the kitten's eye socket, thrusts it into the kitten's mouth loudly fracturing its skull, and stomps repeatedly on the animal's head.  During the attack, the kitten hemorrhages blood, screams blindly in pain, and is ultimately left dead in a moist pile of blood-soaked hair and bone.[6]

### The Original § 48

In 1999, Congress passed 18 U.S.C. § 48 with overwhelming bipartisan support, primarily to criminalize the interstate sale of animal crush videos. President Clinton underlined this intent when he signed the statute into law, directing the Department of Justice to interpret § 48 as covering only depictions "of wanton cruelty to animals designed to appeal to a prurient interest in sex" in order to "ensure that the Act does not chill protected speech."[7]

---

[6] *See* Written Testimony of Nancy Perry, Addendum B, Senate Hearings at 84-90; http://www.snopes.com/photos/gruesome/crushvideo.asp (last visited Aug. 15, 2013); http://multimedia.hsus.org/investigation/squishy.html (last visited Jan. 13, 2009).

[7] *See* Statement of President William J. Clinton upon Signing H. R. 1887, 34 Weekly Comp. of Pres. Doc. 2557 (Dec 9, 1999).

Although the states' animal cruelty laws prohibit the actual acts of cruelty and torture shown in animal crush videos, Congress deemed § 48 necessary because the state laws had proved ineffective in stemming these grotesque criminal acts. H.R. Rep. No. 106-397, at 3 (1999). Crush videos are made in secret and often do not show the face of the perpetrator, diminishing the possibility of identification.[8] Even where a suspect can be identified, "it is often impossible to prove where and when the videos were made in order to establish jurisdiction and that the crime occurred within the relevant statute of limitations." *Id.* Congress concluded that the only effective way to prevent the crimes depicted in the videos is to target their sales.[9]

### The Supreme Court's Holding in United States v. Stevens

Robert Stevens was indicted and convicted under the original § 48 for selling videos depicting dogfighting. *See United States v. Stevens,* 130 S. Ct. 1577, 1579 (2010). The Third Circuit vacated the conviction and declared § 48 facially unconstitutional. *Id.* at 1580. In the Supreme Court, the Government argued that

---

[8] *See* Letter from David LaBahn, CEO, Assoc. of Prosecuting Attorneys, Sept. 15, 2010, Senate Hearings at 16-17.

[9] *See, e.g.,* 145 Cong. Rec. 25898 (statement of Rep. Bachus) ("In every State it is against the law for them to do it, but we cannot identify these people. But we can identify who is selling them."); *see also id.* (statement of Rep. Shays) ("We cannot prosecute these people without this law.").

the Third Circuit's holding was incorrect because § 48 was "plainly legitimate as applied to crush videos and animal fighting depictions." *Id.* at 1587.

The Supreme Court majority suggested that a statute clearly limited to crush videos and other depictions of true animal cruelty would merit a different analysis, but held that § 48 was facially overbroad because it also could be read to criminalize depictions of lawful hunting or the humane slaughter of livestock. *Id.* at 1588-89. Justice Alito dissented, explaining that the statute should have been upheld by limiting its application to crush videos and videos of "brutal animal fights," which he saw as sufficiently analogous to child pornography. *Id.* at 1601.

### *The 2010 Amendments to § 48*

On December 9, 2010, Congress amended § 48 in an effort to address the Supreme Court's concerns. The new statute is specifically limited to "obscene" depictions of "actual conduct" in which "living" animals are "subjected to serious bodily injury" as defined by federal statute. § 48(a)(1) and (2). The new § 48 also specifically excludes depictions of veterinary or agricultural husbandry practices, the slaughter of animals for food, or hunting, trapping, or fishing. § 48(e)(1).

## **ARGUMENT**

## I.    **THE DISTRICT COURT ERRED BY ENTERTAINING A FACIAL CHALLENGE TO § 48**

As a preliminary matter, the district court's constitutional concerns—even if they were valid—should not have led it to declare § 48 *facially* unconstitutional. The statute explicitly prohibits only "obscene" material.  When Congress uses a term of art, the legally accepted meaning governs.  *See Morissette v. United States*, 342 U.S. 246, 263 (1952).  The legal community, the Supreme Court's case law, and Congress universally understand "obscene" to be a term of art that refers to the *Roth-Miller* standard for constitutional obscenity.  *Hamling v. United States*, 418 U.S. 87, 105, 113 (1974); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 505 n.13 (1985).  The Supreme Court has already upheld several federal obscenity statutes on the basis that it understood the bare word "obscene" to incorporate the definition of obscenity as established in *Roth* and *Miller*.[10]

---

[10] *See United States v. 12 200-Ft. Reels of Super 8mm Film, 413 U.S. 123, 130* n.7 (1973) ("If and when such a 'serious doubt' is raised as to the vagueness of the words '*obscene*,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U. S. C. § 1305 (a) and 18 U. S. C. § 1462 . . . we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*.") (emphasis added); *United States v. Orito*, 413 U.S. 139, 145 (1973) (same); *Miller*, 413 U.S. 15, 19 n.2 (1972) (noting that "obscene material" has "a specific judicial meaning which derives from the *Roth* case").

Against that backdrop, the district court erred by attributing a different meaning to the word "obscene" in § 48, drawn from inferences from the legislative history. And in any event that interpretive move badly misunderstands the legislative history. Undersigned counsel testified and urged Congress to insert the word "obscene" *specifically to ensure that the Roth / Miller obscenity requirements were fully incorporated.*[11] And constitutional scholars who testified agreed that limiting the scope of § 48 to include those crush videos that would be obscene under the *Roth/Miller* test would not pose a constitutional problem.[12] Congress used the word "obscene" specifically and intentionally to confine the statute within constitutional bounds. Giving that word an unconstitutional construction defeats Congress's intent, and violates fundamental rules of statutory interpretation.

By definition, § 48 applies only to material that is constitutionally obscene. If the district court thought that the materials at issue here were *not* obscene, the statute does not apply and the defendants should be acquitted. And even under the district court's incorrect understanding of obscenity doctrine § 48 would have valid

---

[11]   *See* Written Testimony of J. Scott Ballenger, Subcommittee on Crime, Terrorism, and Homeland Security of the House Committee on the Judiciary, *United States v. Stevens: The Supreme Court's Decision Invalidating the Crush Video Statute* (May 26, 2010), 111th Cong. 129 at 59 (hereinafter "House Hearings"), available at http://judiciary.house.gov/hearings/printers/111th/111-129_56641.PDF.

[12]   *See* Written Testimony of Professor Cheryl Hanna ("Hanna Testimony"), Senate Hearings at 36-41; Testimony of Professor Stephen Vladeck, House Hearings at 65; Testimony of Professor Nathaniel Persily, *id.* at 76 (suggesting that Congress "take the Miller test and put it into the law" to "narrow the potential applications.")

applications—such as obscene animal crush videos that also depict sexual intercourse. Those applications would at least call for an overbreadth analysis that the court did not perform, and that § 48 should survive. *See* Gov't Br. 46-49.

## II.    CRUSH VIDEOS ARE CONSTITUTIONALLY OBSCENE

The district court concluded that the typical animal crush video cannot be obscene because constitutional obscenity is limited to depictions of human biological sex acts like intercourse and masturbation. That premise is incorrect.

Obscenity doctrine and prosecutions have never been so limited. In *Miller* the Supreme Court suggested that obscene materials could include "[p]atently offensive representations . . . of ultimate sex acts, normal or perverted," but also "*excretory functions*, and lewd exhibition of the genitals." *Miller*, 413 U.S. at 25 (emphasis added); *see also Roth v. United States*, 354 U.S. 476, 487 n.20 (1957) (recognizing that obscenity can encompass a "morbid interest . . . in excretion"). The Supreme Court deliberately left it to the fact-finder to decide whether the depictions at issue are "sexual conduct." Hanna Testimony, Senate Hearings at 6.[13]  And in *Mishkin v. New York*, the Court held that certain books depicting deviant sexual practices like "fetishism," "flagellation," and "beatings" were

---

[13] *See also Ginzburg v. United States*, 383 U.S. 463 (1966) (evidence that the petitioners deliberately represented the accused publications as erotically arousing and commercially exploited them as erotica solely for the sake of prurient appeal amply supported the trial court's determination that the material was obscene).

obscene because "where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest of the members of that group." 383 U.S. 502, 508-09 n.7 (1966). The "sexual conduct" aspect of the *Miller* test has always been understood similarly, as illustrated by *Miller's* own examples. As the Government explains, sadomasochistic materials are common subjects of obscenity prosecutions and often do not depict actual sex.[14]

There was broad agreement among the parties and *amici* in *United States v. Stevens*—even those urging the Court to invalidate the prior statute, and exculpate Stevens himself—that some if not all crush videos could meet the constitutional standard for obscenity, and that if Congress had crafted a narrower law specifically targeted at those materials it would have been constitutional.[15] Crush videos are

_____

[14] *See, e.g.,* Gov't Br. 30-33, 38-40; *Ward v. Illinois,* 431 U.S. 767, 773 (U.S. 1977); *United States v. McDowell*, 498 F.3d 308, 311 (5th Cir. 2007) (prosecution for videos showing sadistic and masochistic "sexual torture"); *United States v. Davidson*, 283 F.3d 681 (5th Cir. 2002) (prosecution for, *inter alia*, snuff videos and depictions of rape and torture); *United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996) (images depicting bestiality and sadomasochistic torture).

[15] *See* Brief for the CATO Institute as Amicus Curiae in Support of Respondent at 21, *Stevens*, 130 S. Ct. 1577 (stating that "crush videos . . . are 'designed to appeal to persons with a very specific sexual fetish' [and] are obscene by any standard . . ."); Brief for the Association of American Publishers, Inc. et al. as Amicus Curiae Supporting Respondent at 17, *Stevens*, 130 S. Ct. 1577 (stating "[h]ad Congress sought to proscribe only 'crush videos,' it could have done so, and this would be a much different case."); Brief for National Rifle Association of America, Inc. as Amici Curiae Supporting Respondent at 35, *Stevens*, 130 S. Ct. 1577

sold through pornographic websites to satisfy the prurient desires of deviant individuals for whom crushing and being crushed *is* sexual conduct. To the extent there is any doubt about that, it is a question for the jury after expert testimony.

## III.    CRUSH VIDEOS ARE INTEGRAL TO CRIMINAL CONDUCT

Crush videos also are constitutionally unprotected because they are "speech integral to criminal conduct[.]" *Stevens*, 130 S. Ct. at 1580 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). As Justice Alito explained in his dissent in *Stevens*, the original § 48 "was enacted not to suppress speech, but to prevent horrific acts of animal cruelty—in particular, the creation and commercial exploitation of 'crush videos,' a form of depraved entertainment that has no social value." *Id.* at 1592 (Alito, J., dissenting). Justice Alito explained in detail why crush videos are constitutionally unprotected for reasons very similar to those the Supreme Court gave for holding non-obscene child pornography unprotected in

---

("Congress could have defined and criminalized 'crush videos.'"); Brief for the Reporters Committee for Freedom of the Press and Thirteen News Media Organizations as Amici Curiae Supporting Respondent at 22, *Stevens*, 130 S. Ct. 1577 ("Congress could have regulated legally obscene crush videos in a manner that did not threated news reporting and other high-value speech."); Brief for the Respondent at 50, *Stevens*, 130 S. Ct. 1577 (stating that if Congress's aim was to attack "the very narrow and specialized problem of crush videos . . . it should have crafted an obscenity statute (or used an existing one) to specifically address 'this sliver of speech' . . ."); and *Stevens*, 533 F.3d 224, n.5 (acknowledging that "a hypothetical statute that would only regulate crush videos . . . might target obscenity under the *Miller* test because crush videos appeal to a prurient interest . . .").

*New York v. Ferber*, 458 U.S. 747 (1982)*. Id.* at 1597-1601. The majority opinion never challenged Justice Alito's reasoning, and it is persuasive.

Congress singled out crush videos for prohibition not because of any particular ideas they express, but because of the horrific criminal acts necessarily involved in their creation. Since the criminal conduct depicted in animal crush videos occurs for the sole purpose of profiting from the resulting depictions, the crime and its depiction are inextricably linked. *Id.* at 1599. Thus, as in *Ferber*, the market for crush videos is "'intrinsically related' to the underlying abuse, and [is] therefore 'an integral part of the production of such materials, an activity illegal throughout the Nation.'" *Id.* at 1586. Indeed, the original § 48 was so effective in shutting down crush video sites that by 2007 "sponsors of § 48 declared the crush video industry dead. Even overseas websites shut down in the wake of § 48." *Id.* at 1598. After the Third Circuit invalidated the statute in *Stevens*, crush videos quickly reappeared online. *Id.*

The district court erred in concluding that depictions of animal cruelty are not "speech integral to criminal conduct" merely because "[n]othing in [the amended] § 48 requires that the acts enumerated in subsection (a)(1) be illegal." *United States v. Richards*, 2013 U.S. Dist. LEXIS 55383, at *25 (S.D. Tex. Apr. 17, 2013). As Justice Alito correctly explained in *Stevens*, "[a]ll 50 States and the

District of Columbia have enacted statutes prohibiting animal cruelty." *Stevens*, 130 S. Ct. at 1598 (Alito, J. dissenting). The acts described in the amended § 48 *are* illegal, everywhere, and Congress was entitled to take notice of that fact. *See* 156 Cong. Rec. S8202-04, H.R. 5566, Sec. 2, 2010 WL 4683682 (Nov. 19, 2010). The statute upheld in *Ferber* did not separately and explicitly require that the depicted sexual conduct involving a minor under 16 must itself have been illegal. *See* 458 U.S. at 751. That will *usually* be true but not always; for example, 15 year olds can marry in many States, including New York, with parental and judicial approval.[16] It was enough that child pornography depicts and incentivizes conduct that is *overwhelmingly likely* to be illegal. The district court also fixated on dicta in *Brown v. Entertainment Merchants*, 131 S. Ct. 2729, 2734 n.1 (2010), noting that one way to resolve the concerns identified in *Stevens* about the vagaries of state law might have been to add a requirement that the conduct depicted must be illegal where it happened. But Congress found another, better solution to any potential vagueness about the prohibited conduct—by specifically defining that conduct in the federal law itself. *See* Gov't Br. at 21-22.

### CONCLUSION

The decision of the district court should be reversed.

---

[16] *See generally* http://en.wikipedia.org/wiki/Marriageable_age#North_America

Dated:  August 30, 2013          Respectfully submitted,

                                 s/ J. Scott Ballenger
                                 J. Scott Ballenger
                                 LATHAM & WATKINS LLP
                                 555 11th Street, NW
                                 Suite 1000
                                 Washington, DC  20004
                                 (202) 637-2200

                                 S. Amy Spencer
                                 Samuel B.C. de Villiers
                                 LATHAM & WATKINS LLP
                                 885 Third Avenue, Suite 1000
                                 New York, NY 10022
                                 (212) 906-1200

                                 *Counsel for Amicus Curiae The Humane*
                                 *Society of the United States*

                                 Jonathan R. Lovvorn
                                 Aaron Green
                                 Kimberly Ockene
                                 THE HUMANE SOCIETY OF THE
                                 UNITED STATES
                                 2100 L Street, NW
                                 Washington, DC 20037
                                 (202) 676-2325

                                 *Counsel for Amicus Curiae The Humane*
                                 *Society of the United States*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 4,024 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated:  August 30, 2013                    Respectfully submitted,

<div style="margin-left:40%">

s/ J. Scott Ballenger
J. Scott Ballenger
LATHAM & WATKINS LLP
555 11th Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200

S. Amy Spencer
Samuel B.C. de Villiers
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-1200
*Counsel for Amicus Curiae The Humane Society of the United States*

Jonathan R. Lovvorn
Aaron Green
Kimberly Ockene
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW
Washington, DC 20037
(202) 676-2325
*Counsel for Amicus Curiae The Humane Society of the United States*

</div>

## CERTIFICATE OF SERVICE

### 13-20265

### USA v. Richards

I hereby certify that I caused the foregoing Brief of *Amicus Curiae* The Humane Society of the United States in Support of Appellant to be served on all counsel via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Rule 25:

Kenneth Magidson
United States Attorney,
Southern District of Texas
Mythili Raman
Acting Assistant Attorney General
Denis J. McInerney
Acting Deputy Assistant Attorney General
John M. Pellettieri
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 1264
Washington, DC 20530
(202) 307-3766

*Attorneys for Appellant*

Joyce A. Raynor
9894 Bissonnet, Suite 815
Houston, TX 77036-0000
(281) 684-1463

Marjorie A. Meyers
Federal Public Defender
Philip G. Gallagher
Assistant Federal Public Defender
Federal Public Defender's Office
Southern District of Texas
440 Louisiana Street, Suite 1350
Houston, TX 77002
(713) 718-4600

*Attorneys for Defendants-Appellees*

I also certify that I electronically filed the Brief of *Amicus Curiae* The Humane Society of the United States in Support of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system:

Clerk of Court
United States Court of Appeals, Fifth Circuit
United States Courthouse
600 South Maestri Place
New Orleans, LA 70130
(504) 310-7700

on this 30th day of August 2013.

/s/ Samantha Collins
Samantha Collins