# Case No. 13-20265

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**,

Plaintiff-Appellant,

v.

**ASHLEY NICOLE RICHARDS; BRENT JUSTICE**,

Defendants-Appellees.

---

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division
Case No. 4:12-CR-731

---

BRIEF FOR AMICI CURIAE
ANIMAL LEGAL DEFENSE FUND AND
ASSOCIATION OF PROSECUTING ATTORNEYS

---

VIRGINIA COLEMAN
2 Berkeley Place
Cambridge, MA 02138
Telephone: 617.951.7213
Facsimile: 617.235.0045
* Not admitted before 5th Circuit

SCOTT M. HENDLER
REBECCA WEBBER
HendlerLaw, PC
1301 W. 25th St., Suite 400
Austin, TX 78705
Telephone: 512.439.3202
Facsimile: 512.439.3201

**Attorneys for Amici Curiae
Animal Legal Defense Fund
Association of Prosecuting Attorneys**

## STATEMENT OF AMICI IDENTITY AND INTEREST

For thirty years, the Animal Legal Defense Fund ("ALDF") has been fighting to protect the lives and advance the interests of animals through the legal system. Founded in 1979 by attorneys active in shaping the emerging field of animal law, ALDF has worked tirelessly for stronger enforcement of anticruelty laws and more humane treatment of animals. Currently, hundreds of attorneys and more than 110,000 members support ALDF's groundbreaking efforts to ensure that the U.S. legal system works to end the suffering of abused animals.

ALDF has been a leader in publicizing the link between human and animal cruelty, and in advocating the adoption and enforcement of criminal laws designed to punish cruelty to animals. ALDF devotes substantial resources to cases involving cruelty to animals, and thus has extensive knowledge of the challenges law enforcement officials face in prosecuting these crimes and the interests served by more effective enforcement of these laws. In particular, ALDF spent considerable time, financial resources, and institutional goodwill educating the public about the Animal Crush Video Prohibition Act of 2010, and urging the passage of the Act.

The Association of Prosecuting Attorneys ("APA") was founded as a national organization to represent all prosecutors and provide additional resources such as training and technical assistance in an effort to develop proactive and

i

innovative prosecutorial practices that prevent crime, ensure equal justice, and make our communities safer. The APA's board of directors includes current and former prosecutors from states throughout the nation.

The APA acts as a global forum for the exchange of ideas, allowing prosecutors to collaborate with each other and other criminal justice partners. The APA also serves as an advocate for prosecutors on emerging issues related to the administration of justice, among other ways by submitting briefs as amicus curiae in appropriate cases. In order to help prosecutors more efficiently crack down on perpetrators of animal cruelty, the APA provided written testimony to the Senate Committee on the Judiciary supporting prompt enactment of the Animal Crush Video Prohibition Act of 2010.

All parties have consented to ALDF and the APA appearing as <u>amici curiae</u> and filing this brief.[*]

---

[*] This brief is submitted pursuant to Federal Rule of Appellate Procedure 29(a). No counsel for a party authored this brief in whole or in part, and no counsel, party, nor other person made a monetary contribution intended to fund preparation or submission of this brief.

# TABLE OF CONTENTS

**Page**

STATEMENT OF <u>AMICI</u> IDENTITY AND INTEREST ........................................i

TABLE OF AUTHORITIES ...................................................................................v

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT ..........................................................................................................2

I.   THE OBSCENITY EXCLUSION FROM FIRST AMENDMENT
     PROTECTION BY DEFINITION APPLIES TO § 48 AS
     WRITTEN, AND THE DISTRICT COURT ERRED IN
     RELYING ON LANGUAGE FROM THE LEGISLATIVE
     HISTORY TO HOLD OTHERWISE ........................................................2

II.  THE ANIMAL CRUSH VIDEOS INVOLVED IN THE
     INSTANT CASE CAN SATISFY THE THREE-PRONG TEST
     FOR OBSCENITY UNDER <u>MILLER</u>, WHICH HAS WIDELY
     BEEN CONSTRUED AS INCLUDING SEXUALLY DEVIANT,
     VIOLENT CONDUCT ..............................................................................6

     A. Animal Crush Videos are Explicit, Graphic, Prolonged
        Depictions of the Actual Torture and Killing of Animals With
        Distinct and Obvious Sexual Overtones, in order to Satisfy the
        Sexual Fetish of a Target Audience That Finds Such Depictions
        Sexually Arousing ...............................................................................7

     B. The Videos Depict "Sexual Conduct" as That Term is Used in
        the Second Prong of the <u>Miller</u> Test ...............................................10

        1. "Sexual conduct" within the meaning of the <u>Miller</u> test
           includes sado-masochistic behavior ......................................10

2. Sado-masochistic behavior includes the infliction of
extreme pain on animals for sexual gratification ...................15

CONCLUSION .....................................................................................................19

ADDENDUM .................................................................................................. Add-1

Prohibiting Obscene Animal Crush Videos in the Wake of United
States v. Stevens: Hearing Before the S. Judiciary Comm., 111th
Cong. 1 (2010) (statement of Kevin Volkan, Chair & Professor of
Psychology, California State University Channel Islands) ................... Add-2

## TABLE OF AUTHORITIES

**CASES**

Brown v. Entertainment Merchants Association, 564 U.S. ___, 131 S.
  Ct. 2729 (2011).....................................................................................8

Hamling v. United States, 418 U.S. 87 (1974) ....................................3, 12

Miller v. California, 413 U.S. 15 (1973) ........................................passim

Miller v. Reddin, 293 F. Supp. 216 (C.D. Cal. 1968)..............................16

Mishkin v. New York, 383 U.S. 502 (1966)......................................12, 13

Paris Adult Theatre I v. Slaton, 413 U.S. 49 (1973)................................12

People v. Thomason, 84 Cal. App. 4th 1064 (2000) .................................8

Ratzlaf v. United States, 510 U.S. 135 (1994)...........................................4

Red Bluff Drive-In v. Vance, 648 F.2d 1020 (5th Cir. 1981) ....................13, 16, 17

Spokane Arcades v. Eikenberry, 544 F. Supp. 1034 (E.D. Wash.
  1982) ...............................................................................................15, 16

United States v. 12 200-Ft Reels of Film, 413 U.S. 123 (1973)................3

United States v. Delmarle, 99 F.3d 80 (2d Cir. 1996) .............................17

United States v. Lyckman, 235 F.3d 234 (5th Cir. 2000).........................17

United States v. Parker, 267 F.3d 839 (8th Cir. 2001) ............................17

United States v. Petrov, 747 F.2d 824 (2d Cir. 1984) .............................12

United States v. Ragsdale, 426 F.3d 765 (5th Cir. 2005) ..................13, 14

United States v. Rudzavice, 586 F.3d 310 (5th Cir. 2009)........................................4

United States v. Stevens, 559 U.S. 460 (2010)......................................................7, 8

United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973)...........................................5

United States v. Thomas, 74 F.3d 701 (6th Cir. 1996)............................................5

United States v. Wolk, 337 F.3d 997 (8th Cir. 2003).............................................17

Ward v. Illinois, 431 U.S. 767 (1977) .......................................................11, 12, 13

## FEDERAL STATUTES

18 U.S.C. § 1461 ....................................................................................................4

18 U.S.C. § 1462....................................................................................................3, 4

18 U.S.C. § 2256...................................................................................................17

18 U.S.C. § 48.................................................................................................passim

19 U.S.C. § 1305(a) ...............................................................................................3

## STATE STATUTES

18 Pa. Cons. Stat. § 5903 ................................................................................ 15, 18

720 Ill. Comp. Stat. Ann. 5/11-20..........................................................................15

720 Ill. Comp. Stat. Ann. 5/11-21..........................................................................18

Ala. Code § 13A-12-200.1 ................................................................................ 14, 18

Ariz. Rev. Stat. § 13-3501 ................................................................................ 14, 18

Ark. Code Ann. § 5-68-302 ....................................................................................15

Cal. Penal Code § 311.3 ..........................................................................14

Cal. Penal Code § 311.4 ..........................................................................14

Colo. Rev. Stat. § 18-7-101 .....................................................................15

Colo. Rev. Stat. § 18-7-501 .....................................................................18

Conn. Gen. Stat. § 53a-193 ................................................................ 14, 18

D.C. Code § 22-2201 .......................................................................... 15, 18

Del. Code Ann. tit. 11, § 1366 .................................................................18

Fla. Stat. Ann. § 847.001 .........................................................................18

Ga. Code Ann. § 16-12-100.1 ..................................................................18

Ga. Code Ann. § 16-12-80 .......................................................................14

Haw. Rev. Stat. Ann. § 712-1210 ............................................................18

Idaho Code Ann. § 18-1514 .....................................................................18

Ind. Code Ann. § 35-49-1-9 .....................................................................14

Iowa Code § 728.1 ...................................................................................14

Kan. Stat. Ann. § 21-6401 .......................................................................15

Kan. Stat. Ann. § 21-6402 .......................................................................18

Ky. Rev. Stat. § 531.010 ..........................................................................14

La. Rev. Stat. Ann. § 14:106 .............................................................. 14, 18

Mass. Gen. Laws ch. 272, § 31 ................................................................14

Md. Code Ann., Crim. Law § 11-101 .................................................................18

Mich. Comp. Laws Serv. § 722.672, sec. 2 ...................................................18

Mich. Comp. Laws Serv. § 722.673 .................................................................14

Minn. Stat. § 617.241 ...................................................................... 15, 18

Miss. Code Ann. § 97-29-103 ...........................................................................15

Mo. Rev. Stat. § 573.010 .................................................................. 15, 18

Mont. Code Ann. § 45-8-205 .......................................................... 15, 18

N.C. Gen. Stat. § 14-190.13 ..............................................................................15

N.C. Gen. Stat. § 19-12 .....................................................................................18

N.D. Cent. Code § 12.1-27.1-01 ..................................................... 15, 18

N.H. Rev. Stat. Ann. § 650:1 ...........................................................................15

N.Y. Penal Law § 235.00 ...................................................................................15

N.Y. Penal Law § 235.20 ...................................................................................18

Neb. Rev. Stat. Ann. § 28-807 .........................................................................18

Nev. Rev. Stat. Ann. § 201.262 ........................................................................18

Ohio Rev. Code Ann. § 2907.01 ...................................................... 15, 18

Okla. Stat. tit. 21, § 1024.1 .............................................................. 15, 18

Or. Rev. Stat. § 167.060 ................................................................... 15, 18

R.I. Gen. Laws § 11-31-1 ................................................................. 15, 18

S.C. Code Ann. § 16-15-305 .............................................................. 15, 18

S.D. Codified Laws § 22-24-27 ........................................................ 15, 18

Tenn. Code Ann. § 39-17-901 ...............................................................18

Tex. Penal Code § 43.25(a)(2) ........................................................ 14, 15

Utah Code Ann. § 76-10-1201 ...............................................................18

Utah Code Ann. § 76-10-1203 ...............................................................15

Vt. Stat. Ann. tit. 13, § 2801 .................................................................18

W. Va. Code § 61-8A-1 .........................................................................15

Wash. Rev. Code Ann. § 9.68.050.........................................................15

Wash. Rev. Code. Ann. § 9.68.130........................................................15

Wis. Stat. § 944.21 ................................................................................15

Wyo. Stat. Ann. § 6-4-301 .....................................................................15

## LEGISLATIVE HISTORY

Animal Crush Video Prohibition Act of 2010, Pub. L. 111-294..............................4

H.R. Rep. No. 111-549 (2010).............................................................4, 5

Prohibiting Obscene Animal Crush Videos in the Wake of United States v.
    Stevens: Hearing Before the S. Judiciary Comm., 111th Cong. 1 (2010)
    (statement of Kevin Volkan, Chair & Professor of Psychology, California State
    University Channel Islands) ...................................................................9

## OTHER AUTHORITIES

"Sadomasochism," Merriam-Webster Online Dictionary,
    http://www.merriam-webster.com (Aug. 21, 2013)............................................17

## SUMMARY OF ARGUMENT

The issue presented by this appeal is whether 18 U.S.C. § 48 in its present form, the second attempt by Congress to stamp out the irredeemably vile industry of animal crush videos, is limited in scope to those videos which are "obscene" and thus not entitled to First Amendment protection. That question is readily answered yes because that is what the statute says. The District Court's holding to the contrary is based on language in the Congressional findings and legislative history which is not itself in the statute and which cannot override the statute's use of a legal term of art the definition of which has been fixed by the Supreme Court: the term "obscene" as used in § 48 of necessity incorporates the three-prong test for obscenity set out by the Supreme Court in Miller v. California, 413 U.S. 15 (1973). In addition, the language from the legislative history cited by the District Court is taken out of context; a full reading makes it clear that Congress was fully aware of Miller and intended the term "obscene" to have the meaning given to it by Miller.

The further question then arises whether the animal crush videos involved in the instant case depict "sexual conduct" and therefore may be obscene as a matter of law under § 48 as properly so construed. The answer to this second question is likewise yes. Animal crush videos depict a variant of sado-masochistic behavior, involving the infliction of pain for sexual pleasure on animals rather than on humans, and sado-masochism in its manifold bizarre forms has been recognized by

-1-

the Supreme Court and this Circuit, as well as the vast majority of states by statute,

as sexual conduct which can be obscene.

## ARGUMENT

I.    **THE OBSCENITY EXCLUSION FROM FIRST AMENDMENT PROTECTION BY DEFINITION APPLIES TO § 48 AS WRITTEN, AND THE DISTRICT COURT ERRED IN RELYING ON LANGUAGE FROM THE LEGISLATIVE HISTORY TO HOLD OTHERWISE.**

The definition of "animal crush video," the creation or distribution of which

is prohibited by § 48, has two component parts, both of which must be satisfied in

order for the statute to apply. The first part describes the conduct shown on such

videos, which basically involves the torture and killing of one or more animals.

The second part adds the requirement that the video be "obscene," without defining

the term.[1]

Where a federal statute uses the term "obscene" without definition, as does §

48, it is established that the role of the federal court is to construe the term

consistent with the three-prong test for obscenity established by the Supreme Court

in Miller, 413 U.S. 15. The Court so held in United States v. 12 200-Ft Reels of

_____

[1] Section 48, as originally enacted in 1999, was held overly broad and thus facially unconstitutional by the Supreme Court in United States v. Stevens, 559 U.S. 460, 130 S. Ct. 1577 (2010). The current statute, which is very much narrower in scope and also includes exceptions for depictions of veterinary or husbandry practices, slaughter of animals for food, and hunting, trapping or fishing, is not susceptible to such an argument. It was enacted seven months after the decision in Stevens came down, by a vote of 416-3 in the House and a unanimous vote in the Senate: a rare example of bipartisanship and speed by a Congress not known for either.

Film, 413 U.S. 123 (1973), decided on the same day as Miller and extending the

Miller test to federal as well as state statutes. The statute involved in Reels of Film,

19 U.S.C. § 1305(a), prohibited the importation of "obscene" materials; the Court

remanded the case for a determination of whether the materials in question were

obscene under the Miller standard with the following guidance for the district court

below:

> . . . [W]hile we must leave to state courts the construction of state
> legislation, we do have a duty to authoritatively construe federal
> statutes where 'a serious doubt of constitutionality is raised' and 'a
> construction of the statute is fairly possible by which the question may
> be avoided. If and when such a 'serious doubt' is raised as to the
> vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'indecent,' or
> 'immoral' as used to describe regulated material in 19 U.S.C. §
> 1305(a) and 18 U.S.C. § 1462, we are prepared to construe such terms
> as limiting regulated material to patently offensive representations or
> descriptions of that specific 'hard core' sexual conduct given as
> examples in Miller v. California. Of course, Congress could always
> define other specific 'hard core' conduct.

413 U.S. at 130 n.7 (citations omitted).

The Court followed its own guidance in Hamling v. United States, 418 U.S.

87 (1974), reh'g denied, 419 U.S. 885 (1974). Hamling involved a challenge to the

constitutionality under Miller of a federal statute, 18 U.S.C. § 1461, that proscribes

the mailing of "obscene, lewd, lascivious, indecent, filthy or vile" materials. The

Court noted that the lesson of Miller was that "generic terms" such as used in §

1461 should be construed post-Miller as limited in the manner suggested in Reels

of Film. 418 U.S. at 113-14. Miller and its companion cases "were intended neither

as legislative drafting handbooks nor as manuals of jury instructions. . . . <u>Reels of Film</u>, <u>supra</u>, made clear our willingness to construe federal statutes dealing with obscenity to be limited to material such as that described in <u>Miller</u>." <u>Id</u>. at 115.[2]

The District Court in the instant case, by contrast, read into § 48 as a definition of "obscene" a portion of the Findings section of the Animal Crush Video Prohibition Act of 2010 (the "Act"), Pub. L. 111-294, which enacted § 48, and language in the accompanying House Report, H.R. Rep. No. 111-549 (2010). (R. 107-08.) The court then found that language lacking as a definition under the second prong of the <u>Miller</u> test because it did not explicitly include a requirement that the material portray or depict "sexual conduct." (<u>R. 108</u>.)

It is axiomatic that "we do not resort to legislative history to cloud a statutory text that is clear." <u>Ratzlaf v. United States</u>, 510 U.S. 135, 147-48 (1994). The meaning of the statutory term "obscene," used without definition, is clear and unambiguous under the foregoing authority: it means that which is obscene under the <u>Miller</u> test. In using the word alone, without definition, Congress automatically incorporated <u>Miller</u> and the "judicial gloss" which is to be used to bring an

---

[2] The previous year this Circuit Court had reached the same conclusion in rejecting a claim that 18 U.S.C. § 1462, which uses language similar to that of § 1461, was unconstitutional because <u>Miller</u> required "the applicable statute [to] specifically define sexual conduct whose depiction or description is thereby restricted." <u>United States v. Thevis</u>, 484 F.2d 1149, 1155 (5th Cir. 1973). To the contrary, the court held that the second prong of the <u>Miller</u> test "may be met . . . by authoritative judicial construction." Id.; <u>accord</u> <u>United States v. Rudzavice</u>, 586 F.3d 310, 314-315 (5th Cir. 2009), <u>cert. denied</u>, 559 U.S. 984 (2010).

obscenity statute phrased in general terms into compliance with <u>Miller</u>. <u>Thevis</u>, 484 F.2d at 1154.

Furthermore, a reading of the text of the House Report *immediately before and after* the sentence at page five quoted by the court below makes it abundantly clear that far from ignoring <u>Miller</u> or attempting to broaden the <u>Miller</u> test for obscenity, Congress had carefully considered <u>Miller</u> and concluded, for the reasons discussed in detail below in Section II, that the videos in question met the <u>Miller</u> test *including* the "sexual conduct" component focused on by the court below.[3] In the face of this language, the District Court's assertion that "Congress . . . has

---

[3] The full relevant House Report text reads as follows:

> The witnesses [at the House Judiciary Committee's Subcommittee on Crime, Terrorism and Homeland Security May 26, 2010 hearing on the meaning of the <u>Stevens</u> decision] also agreed that crush videos could be constitutionally prohibited in line with the obscenity doctrine formulated by the Supreme Court in *Miller v. California. Miller* and its progeny firmly established the term 'obscene' as a legal term of art. The witnesses concurred that Congress can ban interstate and foreign commerce in depictions of acts of illegal animal cruelty that appeal to the 'prurient interest,' are 'patently offensive,' and 'lack serious literary, artistic, political or scientific value. *Although obscenity may generally apply to materials that depict or describe a more obviously sexual act, case law shows that obscenity can also cover unusual deviant acts.*[13]
>
> *n.13. Subcommittee Hearing . . . (prepared testimony of J. Scott Ballenger, 12-13 (referring to prosecution of individual selling images depicting, inter alia, sadomasochistic torture, United States v. Thomas, 74 F.3d 701 (6th Cir. 1996)). 'Sadomasochism' is defined as [t]he combination of sadism and masochism, in particular the deriving of pleasure, especially sexual gratification, from inflicting or submitting to physical or emotional abuse.' American Heritage Dictionary of the English Language (Fourth Ed. 2010).*

H.R. Rep. No. 111-549, at 5 (2010) (emphasis supplied; other footnotes omitted).

attempted to create its own definition of 'obscenity'" (R. 108), is simply not supported by the facts.

Congress indisputably intended § 48 to apply to the genre of animal crush videos, and in limiting the statute to those that were "obscene" Congress did not believe it was describing a null set. If Congress was wrong on this score -- if animal crush videos cannot as a matter of law be obscene under applicable First Amendment jurisprudence -- the statute is ineffective to achieve its intended purpose assuming it cannot be sustained on any other basis.[4] However, the statute remains constitutional on its face.

The question that must be answered, therefore, is not a constitutional one but rather whether § 48, construed in accordance with <u>Miller</u>, can reach the videos at issue.

## II. THE ANIMAL CRUSH VIDEOS INVOLVED IN THE INSTANT CASE CAN SATISFY THE THREE-PRONG TEST FOR OBSCENITY UNDER <u>MILLER</u>, WHICH HAS WIDELY BEEN CONSTRUED AS INCLUDING SEXUALLY DEVIANT, VIOLENT CONDUCT.

---

[4] If animal crush videos cannot come under the <u>Miller</u> definition of obscene, the two alternative bases argued by the United States below to sustain the statute -- that animal crush videos are "speech integral to criminal conduct" and thus not eligible for First Amendment protection, (R. 78), or, alternatively, if the videos are entitled to First Amendment protection, that § 48 passes the "strict scrutiny" standard, (R. 76-78) – both require either ignoring the statutory requirement that the videos be obscene or positing that Congress implicitly, and contrary to what the legislative history would indicate, adopted some alternate definition of the term for purposes of § 48 only. These alternative arguments become moot if, as we argue below, the videos fall squarely under the <u>Miller</u> definition of "obscene" as it has been applied.

The task of this Court is not to determine whether the animal crush videos at issue are obscene under <u>Miller</u>; that determination is to be made at trial. The task is rather to determine whether they *can* as a matter of law satisfy the <u>Miller</u> three-prong test. If the answer to that question is yes, the District Court's decision must be reversed and the case remanded for trial.

This undertaking must begin with an examination of the videos themselves – what is the conduct depicted and what is the market for them. The totality of that conduct must then be tested under the three-prong <u>Miller</u> test.

**A.     Animal Crush Videos are Explicit, Graphic, Prolonged Depictions of the Actual Torture and Killing of Animals With Distinct and Obvious Sexual Overtones, in order to Satisfy the Sexual Fetish of a Target Audience That Finds Such Depictions Sexually Arousing.**

In <u>Stevens</u>, the Supreme Court described animal crush videos in the following terms,[5] quoting from the legislative history of § 48 as originally enacted:

> Crush videos often depict women slowly crushing animals to death 'with their bare feet or while wearing high heeled shoes,' sometimes while 'talking to the animals in a kind of dominatrix patter' over '[t]he cries and squeals of the animals, obviously in great pain.' The acts depicted in crush videos are typically prohibited by the animal cruelty laws enacted by all 50 States and the District of Columbia.

130 S. Ct. at 1583 (quoting H.R. Rep. No. 106-397 (1999)).[6]

---

[5]  Notably, although the Court in <u>Stevens</u> acknowledged that § 48 was directed primarily at animal crush videos, the case itself involved dogfighting videos, which although abhorrent would clearly not be covered by § 48 in its current form.

[6]  Compare and contrast the unfathomable statement of the court below in this case that "the acts depicted in animal crush videos as defined by § 48 do not necessarily amount to

Crucial to the obscenity analysis is that these videos, sometimes aptly described as "fetish videos,"[7] do not involve violence for the sake of violence, as did, say, the dogfighting videos involved in <u>Stevens</u> or the violent video games at issue in <u>Brown v. Entertainment Merchants Association</u>, 564 U.S. ___, 131 S. Ct. 2729 (2011), relied on by the District Court below. They are done to appeal to a particular kind of sexual deviant: a sadist who derives sexual pleasure from the infliction of pain not on a human but on an animal or, alternatively, a masochist who identifies with and is sexually aroused by the pain and suffering of the animal being tortured. These sexual disorders and the fundamental connection of crush videos to them is discussed at length in the written testimony of Professor Kevin Volkan submitted at an April 15, 2010 hearing before the Senate Judiciary Committee in the wake of <u>Stevens</u>, a copy of which is attached hereto as part of the Addendum. As Professor Volkan states at the outset, "crush videos are sexual in nature and . . . those who watch crush videos do so to obtain sexual gratification."

---

criminal activity under federal or state law." (R. 116.) The defendants in this very case were also charged under the applicable Texas anti-cruelty statute – charges which were subsequently dropped because of the concurrent federal charges (R. 136.) but which have now been revived due to the dismissal by the court below of the federal charges. <u>See</u> Harris County District Court Cause ## 13857680101 (Brent Justice, Defendant) and 138576201010 (Ashley Richards, Defendant).

[7] <u>E.g., People v. Thomason</u>, 84 Cal. App. 4th 1064, 1071 n.2 (2000). In <u>Thomason</u>, the appellate court upheld the conviction under animal cruelty statute of a producer of crush videos in which mice and rats were "taunted, maimed, tortured, mutilated, disemboweled and ultimately slowly killed under the heel of a shoe." <u>Id.</u> at 1066. See also Section 2 of the Act, in which Congress finds that "there are certain extreme acts of animal cruelty that appeal to a specific sexual fetish."

Prohibiting Obscene Animal Crush Videos in the Wake of United States v. Stevens: Hearing Before the S. Judiciary Comm., 111th Cong. 1 (2010) (statement of Kevin Volkan, Chair & Professor of Psychology, California State University Channel Islands).

The record in this case to date, which does not include the videos themselves, nonetheless amply supports this observation. Officer Susanne Hollifield of the Houston Police Department testified in graphic detail at the Arraignment/Detention Hearing involving the defendants about a few of the forty-five videos allegedly produced by the defendants that she had viewed. These accounts, some of which are described in the brief for the United States at pages 12 and 13, are haunting and stomach-churning: they will not be repeated except to note that in two of them the woman shown, after having completed the torture, maiming and ultimate killing of the animal involved (in one a dog and in another a tabby cat), urinated on its body. (R. 202-03, 218-19.) Three videos also include crude, taunting sexual language. In all of them the woman was described as provocatively dressed or sexy. (R. 209, 212, 217.)

Officer Hollifield also testified that the videos were custom-ordered, which is to say made in response to a specific email request from a potential customer for a video torturing, debasing and destroying a particular kind of animal. The video is then produced and available to the customer upon payment. (R. 198-99, 209.)

It is against this factual background that the analysis under <u>Miller</u> must be undertaken.

**B.    The Videos Depict "Sexual Conduct" as That Term is Used in the Second Prong of the Miller Test.**

**1.  "Sexual conduct" within the meaning of the <u>Miller</u> test includes sado-masochistic behavior.**

The decision of the District Court was based solely on its view that the conduct shown in the videos was not sexual, as required by the second prong of the <u>Miller</u> test: that the work "depict or portray, in a patently offensive way, sexual conduct specifically defined by the applicable state law." 413 U.S. at 24.[8] The mayhem committed on the animal victims was characterized as a "non-sexual act" which did not become "sexual conduct" because "sexual noises" were made at the same time: "no reasonable formulation of the term 'sexual conduct' can include making sexual noises while committing a violent non-sexual act." (R. 108-09.)

This is a gross understatement of the extent of obvious sexual content in at least some of the videos. The <u>Miller</u> Court itself included among its examples of what could be sexual conduct "patently offensive representations of . . . excretory functions." 413 U.S. at 25. It is hard to conceive of a more striking instance of such

---

[8]  As discussed in Section I above, where the statute in question does not define "obscene," it does not therefore fail the requirement that the conduct be "specifically defined." Rather, the scope of the statute must be construed consistent with <u>Miller</u>.

conduct than urination on the body of an animal by a scantily clad, foul-mouthed woman who has just tortured and killed the animal whose body she is desecrating.

But this particular conduct is by no means necessary in order to find that the videos in their entirety, including those which do not happen to include urination, depict sexual conduct. It is bizarre, deviant sexual conduct to be sure, but bizarre, deviant sexual conduct, and in particular sado-masochistic behavior involving the infliction of pain on another for sexual gratification, has been authoritatively held post-Miller to be no less sexual conduct for purposes of the second prong of the Miller test.

This principle was established by the Supreme Court within a few years after Miller in Ward v. Illinois, 431 U.S. 767 (1977), an appeal from a conviction under the Illinois obscenity statute for selling materials that featured, among other acts, flagellation with barbed wire, sadism and masochism. Id. at 773 n.3. The appellant's position, as characterized by the Court, was "that sado-masochistic materials may not be constitutionally proscribed because they are not expressly included within the examples of the kinds of sexually explicit representations that Miller used to explicate the aspect of its obscenity definition dealing with patently offensive depictions of specifically defined sexual conduct." Id. To this the Court made short shrift: "[T]hose specifics were offered merely as 'examples,' and, as

later pointed out in <u>Hamling v. United States,</u> they 'were not intended to be exhaustive.'" <u>Id</u>. (citations omitted).

Significantly, the Court in <u>Ward</u> went on to cite with approval its pre-<u>Miller</u> holding in <u>Mishkin v. New York</u>, 383 U.S. 502, 505-510 (1966), stating that there was no suggestion in <u>Miller</u> of an intention to extend constitutional protection to the kind of "flagellatory materials" involved in that case. 431 U.S. at 773. <u>Mishkin,</u> an appeal from a conviction under the New York obscenity statute, involved books featuring "sado-masochism, fetishism, . . . drawings of scantily clad women being whipped, beaten, tortured, or abused, . . . sex in an abnormal and irregular fashion, . . . 'deal[ing] very graphically with . . . the darkening of the flesh under flagellation . . .'" 383 U.S. at 505. Materials such as these bear more than passing resemblance to animal crush videos, with the difference that animal crush videos depict abuse of animals rather than humans and the abuse is real not fictional.[9]

---

[9] <u>Mishkin</u> is also notable for establishing the principle that materials "designed for and primarily disseminated to a clearly defined deviant sexual group" may be tested by their appeal "to the prurient interest in sex of the members of that group. . . . We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group." 383 U.S. at 508-09. When if ever expert testimony is required to establish such appeal, since the average person would be sickened and not sexually aroused by the materials at issue, is a question as to which the Supreme Court reserved judgment in <u>Paris Adult Theatre I v. Slaton</u>, 413 U.S. 49, 56, n.6 (1973) and on which differing views have been expressed. <u>Compare</u> <u>United States v. Petrov</u>, 747 F.2d 824, 831 (2d Cir. 1984) (expert testimony required to establish the existence of a deviant group to which photos of bondage, genital mutilation and torture would appeal) <u>with</u> <u>United States v. Ragsdale</u>, 426 F.3d 765, 774 (5th Cir. 2005), <u>cert. denied</u> 546 U.S. 1202 & 1207 (2006) (expert testimony not required to establish appeal to prurient interest of videos of

Ward was followed by this Circuit in Red Bluff Drive-In v. Vance, 648 F.2d 1020 (5th Cir. 1981), a declaratory judgment action brought by adult entertainment operators challenging the constitutionality of a new Texas obscenity statute which defined "obscene" as a patently offensive representation or depiction of, inter alia, "sadism, masochism." The Circuit Court held this phraseology to be consistent with the second prong of Miller, noting that the Supreme Court in Ward had "approved the inclusion of representations of sado-masochistic conduct as potentially obscene." Id. at 1027.

The instant case differs from Ward, Mishkin, and Red Bluff Drive-In in that it is a prosecution for violation of a federal statute, not a state obscenity statute. In the former circumstance, this Circuit has looked to the relevant law in the state in which the case arose to determine whether the second prong of the Miller test was satisfied by the materials at issue, noting that by its terms the test speaks of "sexual conduct specifically defined by the applicable state law." Ragsdale, 426 F.3d at 780 (reviewing an appeal from a federal conviction under 18 U.S.C. § 1461). The District Court in the instant case utterly failed to undertake any such inquiry. Had it done so it would have found, as the Circuit Court did in Ragsdale, which likewise

---

bondage, whipping, rape, etc., since "the materials at issue are not so far removed from the realm of recognizable sexual conduct that the jurors would be incapable of assessing the prurient appeal of the materials").

arose in Texas, that Texas state law defines "sexual conduct" as including "sado-masochistic abuse." Tex. Penal Code § 43.25(a)(2) (2013).[10]

It is instructive on this point to look beyond Texas as well, because its statute is hardly alone in this respect. A review of applicable state laws demonstrates that the vast majority of state legislatures, which like the Congress are bound by Miller, have explicitly recognized that sado-masochistic conduct falls within the scope of sexual conduct and/or that such conduct may be obscene. Twenty-eight states, of which Texas is one, define "sexual conduct" or a like term in the context of their obscenity statutes or other offenses with a sexual component as including sado-masochism, torture, or words of similar import,[11] and an

_____

[10] The videos in Ragsdale showed "bondage, fisting, urolagnia (the use of urine in sexual activities), whipping, candles, and simulated rape or abduction." 426 F.3d at 772. Since they involved both sexual intercourse and sado-masochistic abuse, the court held that "under the definition of sexual conduct provided for by the Texas legislature, both videos clearly depict 'sexual conduct.'" Id. at 781. There is no suggestion, nor could there be on the basis of the relevant Texas law, that sado-masochistic abuse by itself would not have been sufficient to constitute sexual conduct. Indeed, the court's further holding that the sexual conduct depicted was "patently offensive," as also required by the second prong of the Miller test, was based to a great extent on the sado-masochistic content of the videos: "intentionally designed to make the viewer believe that the female participant is in a significant amount of pain, distress and danger . . . we take into account . . . the portrayal of excessive torture and pain during the commission of the acts that is intended to seem non-consensual . . ." Id. at 781.

[11] See Ala. Code § 13A-12-200.1(22) (LexisNexis 2013); Ariz. Rev. Stat. § 13-3501(6)(b) (LexisNexis 2013); Cal. Penal Code §§ 311.4(d)(1), 311.3(b)(4) (Deering 2013); Conn. Gen. Stat. §§ 53a-193(3), (14)(D) (2013); Fla. Stat. Ann. § 847.001(16) (LexisNexis 2013); Ga. Code Ann. § 16-12-80(b)(3)(E) (2013); Ind. Code Ann. § 35-49-1-9(4) (LexisNexis 2013); Iowa Code § 728.1(7) (2013); Ky. Rev. Stat. § 531.010(4) (LexisNexis 2013); La. Rev. Stat. Ann. § 14:106(2)(b)(iii) (2013); Mass. Gen. Laws ch. 272, § 31 (LexisNexis 2013); Mich. Comp. Laws Serv. §§ 722.673(f), (g) (LexisNexis

additional ten states and the District of Columbia define "obscene" or a like term in

the same way.[12]

>   **2. Sado-masochistic behavior includes the infliction of extreme pain on animals for sexual gratification.**

The only remaining question which can be asked is whether sado-

masochism as a form of sexual conduct within the scope of <u>Miller</u> includes such

behavior in which the victim is an animal rather than a human.

The principle that sexual conduct within the meaning of the <u>Miller</u> test could

include violence toward animals done for sexual gratification was specifically

approved in what appears to be the only case raising the issue: <u>Spokane Arcades v.</u>

<u>Eikenberry</u>, 544 F. Supp. 1034 (E.D. Wash. 1982), <u>rev'd on other grounds</u>, 725

---

2013); Minn. Stat. § 617.241(b)(2) (2013); Miss. Code Ann. § 97-29-103(1)(c)(v) (2013); Mo. Rev. Stat. § 573.010(4) (2013); Mont. Code Ann. § 45-8-205(8)(c) (2012); N.H. Rev. Stat. Ann. § 650:1(VI) (LexisNexis 2013); N.C. Gen. Stat. § 14-190.13(5)(d) (2013); N.D. Cent. Code § 12.1-27.1-01(11)(e) (2013); Okla. Stat. tit. 21, § 1024.1(3)(d) (2013); 18 Pa. Cons. Stat. § 5903(b) (2013); R.I. Gen. Laws § 11-31-1(8)(ii) (2012); S.C. Code Ann. § 16-15-305(C)(1)(c) (2012); Tex. Penal Code § 43.25(a)(2) (2013); Wash. Rev. Code Ann. §§ 9.68.050(2), 9.68.130(2) (LexisNexis 2013); W. Va. Code § 61-8A-1(n) (LexisNexis 2013); Wis. Stat. § 944.21(e) (2012), and; Wyo. Stat. Ann. § 6-4-301(a)(v)(B) (2013). In the closely related area of sexual exploitation of minors, who like animals are innocent and unable to protect themselves from abuse, Congress has defined "sexually explicit conduct" as including "sadistic or masochistic abuse." 18 U.S.C. § 2256(2)(A)(iv) (2013).

[12] <u>See</u> Ark. Code Ann. §§ 5-68-302(4)-(5) (2012); Colo. Rev. Stat. § 18-7-101(2)(b)(ii) (2012); D.C. Code §§ 22-2201(b)(1)(A)-(B) (2013); 720 Ill. Comp. Stat. Ann. 5/11-20(b)(2) (LexisNexis 2013); Kan. Stat. Ann. § 21-6401(f)(1)(B)(ii) (2012); N.Y. Penal Law § 235.00(1) (Consol. 2013); Ohio Rev. Code Ann. § 2907.01(F)(5) (LexisNexis 2013); Or. Rev. Stat. § 167.060(6) (2012); S.D. Codified Laws § 22-24-27(11)(b) (2013); Utah Code Ann. § 76-10-1203(1)(b) (2013), and; Va. Code Ann. § 18.2-372 (2013).

F.2d 482 (9th Cir. 1984), rev'd 472 U.S. 491 (1985).[13] In Spokane the District

Court, applying Miller, upheld the definition of "obscene matter" in a recently

enacted Washington statute as including "any matter . . . which explicitly depicts

or describes patently offensive representations or descriptions of: . . . (iii) Violent

or destructive sexual acts, including not [sic] not limited to human or animal

mutilation, dismemberment, rape or torture; . . . ." 544 F. Supp. at 1038 n.3. The

District Court summarily dismissed the objection raised to "the reference to

animals":

> The uninitiated might express some wonderment as to what possible
> nexus there might be between violent or destructive behavior directed
> toward animals and sexual materials. Such curiosity is quickly sated
> with a reading of Miller v. Reddin, 293 F. Supp. 216 (C.D. Cal. 1968),
> rev'd on procedural grounds, 422 F.2d 1264 (9th Cir. 1970). See also
> Red Bluff Drive-In, supra, 648 F.2d at 1026. Plaintiffs' announced
> fear that depictions of hunting might fall with the proscriptions of [the
> statute] is totally specious.

544 F. Supp. at 1039.[14]

_____

[13] On appeal in Spokane, the Ninth Circuit Court held the entire statute unconstitutional on its face because it included the word "lust" in its definition of "prurient interest." 725 F.2d at 492-93. On further appeal, the Supreme Court held that the Circuit Court erred in invalidating the entire statute. 472 U.S. at 506-07. Neither of these holdings mentions or in any way bears on the District Court's holding discussed in the text.

[14] Reddin includes a ghastly description of the contents of five books published by the plaintiffs, who sued various governmental authorities involved in prosecuting them under the California obscenity statute. The contents included "beatings, flagellations and other acts of the so-called 'bondage genre,'" and an orgy "with animals interspersed among the crowd. Stabbings of the animals take place and their blood spurts all over the general orgy scene and participants." 293 F. Supp. at 225-26. The decision was reversed on appeal per curiam on the ground that the plaintiffs had voluntarily dismissed the lawsuit

Sheer logic supports the same conclusion. The fact that only a deviant sado-masochist, if you will, as opposed to a mainstream sado-masochist would be sexually aroused by the infliction of extreme pain and cruelty on animals does not mean that the former is engaged any less in sado-masochistic behavior, the key to which, per Merriam Webster, is "the derivation of pleasure from the infliction of physical or mental pain either on others or on oneself." "Sadomasochism," Merriam-Webster Online Dictionary, http://www.merriam-webster.com (Aug. 21, 2013). There is no suggestion that the "others" referenced are limited to human others.

Case law speaks of "sadism" as "delight in physical or mental cruelty." United States v. Lyckman, 235 F.3d 234, 238 n.19 (5th Cir. 2000); United States v. Wolk, 337 F.3d 997, 1007-08 (8th Cir. 2003) (quoting United States v. Parker, 267 F.3d 839, 847 (8th Cir. 2001)); United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996). Such cruelty may as readily, and indeed very much more readily, be inflicted on animals as on humans.

Thirty-two states and the District of Columbia define "sado-masochistic abuse" in relevant part as "torture *by* or upon a person clad in undergarments" (emphasis supplied), a description which by its terms encompasses human-on-

---

before the judgment was entered. Red Bluff Drive-In is discussed in Section II.B.1, above.

animal torture for sexual gratification as well as human-on-human torture.[15] The

state of Florida explicitly contemplates animal involvement, defining sado-

masochism as including "torture by or *upon* a person or *animal*." Fla. Stat. Ann. §

847.001(13) (LexisNexis 2013) (emphasis supplied).

The conclusion is inescapable that sado-masochism as sexual conduct

includes the infliction of pain on animals for the purpose of sexual gratification as

well as the infliction of pain on humans for the same purpose, with the repellent

distinction that the materials produced for the pleasure of those aroused by animal

suffering extend to actual torture, maiming and killing – activities which even the

hardest core pornography do not inflict on humans. The broad acceptance post-

---

[15] See Ala. Code § 13A-12-200.1(21) (LexisNexis 2013); Ariz. Rev. Stat. § 13-3501(5)
(LexisNexis 2013); Ark. Code Ann. § 5-68-302(8) (2012); Colo. Rev. Stat. § 18-7-501(4)
(2012); Conn. Gen. Stat. § 53a-193(7) (2013); Del. Code Ann. tit. 11, § 1366(7) (2013);
D.C. Code § 22-2201(b)(2)(E) (2013); Ga. Code Ann. § 16-12-100.1(6) (2013); Haw.
Rev. Stat. Ann. § 712-1210 (LexisNexis 2013); Idaho Code Ann. § 18-1514(5) (2013);
720 Ill. Comp. Stat. Ann. 5/11-21 (LexisNexis 2013); Kan. Stat. Ann. § 21-6402(d)(7)
(2012); La. Rev. Stat. Ann. § 14:106(2)(b)(iii) (2013); Md. Code Ann., Crim. Law § 11-
101(c) (LexisNexis 2013); Mich. Comp. Laws Serv. § 722.672, sec. 2(d) (LexisNexis
2013); Minn. Stat. § 617.241(b)(2) (2013); Mo. Rev. Stat. § 573.010(16) (2013); Mont.
Code Ann. § 45-8-205(8)(c) (2012); Neb. Rev. Stat. Ann. § 28-807(17) (LexisNexis
2012); Nev. Rev. Stat. Ann. § 201.262 (LexisNexis 2013); N.Y. Penal Law § 235.20(5)
(Consol. 2013); N.C. Gen. Stat. § 19-12(8) (2013); N.D. Cent. Code § 12.1-27.1-01(11)
(2013); Ohio Rev. Code Ann. § 2907.01(P) (LexisNexis 2013); Okla. Stat. tit. 21, §
1024.1(B)(3)(d) (2013); Or. Rev. Stat. § 167.060(9) (2012); 18 Pa. Cons. Stat. § 5903(b)
(2013); R.I. Gen. Laws § 11-31-1(b)(8)(ii) (2012); S.C. Code Ann. § 16-15-305(C)(1)(c)
(2012); S.D. Codified Laws § 22-24-27(13) (2012); Tenn. Code Ann. § 39-17-901(13)
(2013); Utah Code Ann. § 76-10-1201(13) (2013), and; Vt. Stat. Ann. tit. 13, § 2801(5)
(2012).

<u>Miller</u> of sexual conduct as including sado-masochistic conduct therefore necessarily encompasses such conduct directed at animals.

Such a holding is dispositive of this case, since the other two prongs of the <u>Miller</u> test are not at issue in this appeal. There is no suggestion in the opinion below that the District Court viewed the videos in question as failing as a matter of law the first prong of the <u>Miller</u> test: that "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest . . ." 413 U.S. at 24 (quotation omitted). As discussed in Note 9 above, due to the deviant nature of the activities depicted expert testimony may be required to establish satisfaction of the first prong, but that question is not ripe for decision at this time. As for the third prong of the <u>Miller</u> test, "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value," <u>id</u>. at 24, the District Court itself described these videos as "disturbing and horrid" (R. 119); no claim has been or could be made that they have any value whatsoever.

## <u>CONCLUSION</u>

For the reasons stated above the decision of the District Court granting the defendants' motions to dismiss should be reversed and the case remanded for trial.

Respectfully submitted,
HENDLERLAW, P.C.

Scott M. Hendler
Texas Bar No. 09445500
Rebecca Ruth Webber
Texas Bar No. 24060805
1301 West 25th Street
Suite 400
Austin, Texas 78705
Telephone:  (512) 439-3200
Facsimile: (512) 439-3201
shendler@hendlerlaw.com
rwebber@hendlerlaw.com
admitted to practice before Fifth
Circuit

Virginia Coleman
Board of Bar Overseers No.  217740
2 Berkeley Place
Cambridge, MA 02138
Telephone: 617.951.7213
Facsimile: 617.235.0045
* Not admitted before 5th Circuit

ATTORNEYS FOR AMICI
ANIMAL LEGAL DEFENSE FUND
AND ASSOCIATION OF
PROSECUTING ATTORNEYS

## **Certificate of Service**

I certify that a copy of the foregoing brief was filed and served on August 28, 2013 on the Court's CM/ECF system, which will automatically serve a Notice of Electronic Filing on the attorneys of record listed for all parties.

Scott M. Hendler

## <u>Certificate of Compliance</u>

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

X     this brief contains 5,661 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), *or*

☐     this brief uses a monospaced typeface and contains 469 lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

X     this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font, *or*

☐     this brief has been prepared in a monospaced typeface using Microsoft Word 2010 with Times New Roman.

3.     If the Court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout.

4.     The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type volume limits in 5th Cir. R. 32.2.7, may result in the court's striking the brief and imposing sanctions against the person signing the brief.

Scott M. Hendler

Dated: August 28, 2013