**Case No. 13-20265**
**United States Court of Appeals for the Fifth Circuit**

UNITED STATES OF AMERICA

       Plaintiff-Appellee

Versus

ASHLEY NICOLE RICHARDS & BRENT JUSTICE

       Defendant-Appellant

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**
**HONORABLE SIM LAKE, PRESIDING**

_____

**BRIEF OF AMICUS CURIAE**

**STOPCRUSH.ORG**

_____

**Counsel For StopCrush.org:**

**Daphne Pattison Silverman**
**Silverman Law Group**
**TBN 06739550**
**501 North IH-35**
**Austin, Texas 78702**
**(512)485-3003**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... 2

TABLE OF AUTHORITIES.............................................................................. 3

STATEMENT OF INTEREST OF AMICUS CURIAE........................................ 4

INTRODUCTION………................................................................................... 5

SUMMARY OF ARGUMENT…………………….………………….. 7

ARGUMENT........................................................................................................ 7

CONCLUSION.................................................................................................. 14

SIGNATURE OF COUNSEL........................................................................... 14

CERTIFICATE OF SERVICE.......................................................................... 15

# TABLE OF AUTHORITIES

## Supreme Court Decisions

*Brown v. Entertainment Merchants Ass'n*, 131 S.Ct. 2729 (2011)…………..…………8

*Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964)………………………..………..………..9

*Miller v. California*, 413 U.S. 15, 24 (1973)………………………..……..………..8

*United States v. Stevens*, 130 S.Ct. 1577, 559 U.S. 460, 176 L.Ed.2d 435 (2010)………………………………………………………………….……….7,12,13,14

## Rules, Statutes and Congressional Record

18 U.S.C. § 48......................................................................................................7,12,14

Fed.R.App.P. 29….................................................................................................5

Animal Crush Video Prohibition Act of 2010, Pub.L.No. 111-294, § 2(4), 124 Stat. 3177 (2010)....................................................................................................................9

## Circuit Court Of Appeals Decisions

*United States v. Ragsdale*, 426 F.3d 765, 7774 (5th Cir. 2005)..............................................8

## **STATEMENT OF INTEREST OF AMICUS CURIAE**

Stopcrush.org files this Amicus Brief in support of the United States. Stopcrush.org is an initiative and major campaign of the Alliance for Earth, Life, Liberty & Advocacy(AELLA), a tax-exempt, non-profit organization, listed as a public charity under section 501(c)(3) of the Internal Revenue Code. The main goal of Stopcrush.org is to facilitate a global means of generating no less than complete societal intolerance toward the entire sadistic, prurient animal crush interest. Based upon hits to the Stopcrush.org website, supporters of the Stopcrush.org movement are in the hundreds of thousands worldwide.

Stopcrush.org's mission includes researching the crush industry and educating the public and lawmakers worldwide about the horrors of the industry. Stopcrush.org volunteers around the world investigate the manufacture, purpose and distribution of crush videos. Stopcrush.org volunteers infiltrate the crush community in the hopes of identifying the crushers and distributors and bringing them to justice. These heroic volunteers risk their own safety in an effort to speak for those whose cries for help in these videos are unanswered by the sexually charged dominatrixes who torture them to death. Whenever volunteers uncover the identity of anyone involved, law enforcement is informed.  As a result, Stopcrush.org volunteers are in the best possible position to provide empirical data on the crush industry to the Court.

All parties have consented to the filing of this amicus brief pursuant to Fed.R.App.P. 29(a). Pursuant to Fed.R.App.P. 29(c), no party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person, other than the amicus curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting the brief.

## INTRODUCTION

"mmmmmmmmmmmmmmm
I love torture kittens
Mmmmmmmmmmmmm
Yes" Master Therion, Exhibit, p. 60.

"I love to torture animals. To trample them under my heels and as long as they are still alive to skinning." Franzy Fuchs on I love Cruel Girls facebook site, Exhibit, p. 33.

"I love her crush, so sexyyy." Dogy Bondman on Masha's site, Exhibit, p. 18.

"Fuck the rabbit, but the noise to cracking the bones…… uhhhhhh love." Selina Crush, Exhibit A, p. 64.

"Cruelty to animals excites me a lot." Nebojsa Pavasovic, Exhibit, p. 65.

"Welcome to Killer Girls… Dare to play the game of death… www.xxxfetish-media.com." George George advertisement, Exhibit, p. 21.

"Keep this group right and make sure its members are all of the same mindset, ie. loves animal cruelty." Warning in crush facebook group, Exhibit, p. 66.

> "Beatrice abuses a Baby, spanking. Could I just cum watch the pictures. If someone makes a real baby videos abuse can I pay them over 5,00000 dollars for one clip, a baby abused, tortured, spanked and finally killed by mom, sound like really awesome Fucking." TheBeatrice Crush (Anonymous), Exhibit, p. 14.

…the musings of the crush community. Crush conversations are the same across the country, across the world, across race and culture, and across socio-economic status. Crush videos are created solely for sexual gratification, distributed solely for sexual gratification, and sought after solely for sexual gratification. The videos are an integral part of the sexual conduct of the participants in the crush fetish. There is no other purpose for crush videos whatsoever. Any discussion to the contrary is merely academic, has no basis in reality, and creates convoluted legal fallacies.

The crushers market their products in private Facebook pages, on semi-secure social network chats, and hidden within certain porn sites. The crush industry is a subset of the sex industry. When researching crush sites, other web sites promoting sexual conduct pop up on the computer screen offering their wares. Most crushers use fake names, privacy programs, masks and/or cropping to protect their identity. As a result of these precautionary measures, it is very difficult to track the people involved with making the crush videos and therefore difficult to prosecute them. To further complicate prosecution, many crush films are produced in foreign countries where the United States has no jurisdiction to prosecute the crushers themselves.

**SUMMARY OF ARGUMENT**

Animal crush videos are obscene as well as being integral to criminal conduct; therefore, crush videos are not protected by the First Amendment. Congress twice examined the regulation of the distribution of crush videos. Congress's first effort to control this industry was found unconstitutional in *United States v. Stevens*, 130 S.Ct. 1577, 559 U.S. 460, 176 L.Ed.2d 435 (2010). Congress reviewed the decision in *Stevens* closely and redrafted the statute addressing each of the concerns raised in *Stevens* and narrowly tailoring the amended statute to eliminate those concerns. The amended statute applies solely to animal crush videos. 18 U.S.C. § 48.

Case precedent and the Congressional record on the legislative history of 18 U.S.C. § 48 are effectively presented in the Government's Brief and the Amicus Brief of the Human Society. Therefore, the Amicus Brief on behalf of Stopcrush.org is focused primarily on factual support for United States' position found in empirical evidence.

**ARGUMENT**

**A. Crush videos are obscene**

Crush videos satisfy the sexual desires of the most depraved humans, those who are sexually turned on by the torture, mutilation and killing of innocent helpless animals and children. These videos are obscene under any definition specifically

including the definition controlling in the United States found in *Miller v. California*, 413 U.S. 15, 24 (1973) which is: "works (1) which taken as a whole, appeal to the prurient interest in sex, (2) which portray sexual conduct in a patently offensive way, and (3) which, taken as a whole, do not have serious literary, artistic, political, or scientific value." To be obscene, conduct need not appeal to the sexual interests of all humanity; conduct meets the definition if it appeals to the sexual interests of some members of humanity. *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005). Judge Lake seems to limit the interpretation of sexual conduct to "ultimate sexual acts" and "masturbation, excretory functions, and lewd exhibition of the genitals." Memorandum Opinion and Order at 9. However, this was merely a list of examples of obscene conduct from *Miller v. California*, not an exhaustive list of all conduct that qualifies as sexual conduct. *Miller* at 2615. In addition to this comment, Judge Lake also specifically states that he believes the acts depicted in the crush videos are non-sexual acts. Memorandum Opinion and Order at 13. Judge Lake's confusion is certainly understandable. Until one views these videos and reads the comments of the crushers and fans of the crush videos, normal humans cannot possibly comprehend that this conduct is sexual. However, sadly, in reality, crush videos are used for two sexual purposes: masturbation which is on Judge Lake's list and foreplay for "ultimate sexual acts" with a person. Judge Lake cites *Brown v. Entertainment Merchants Ass'n*, 131 S.Ct. 2729 (2011) in support of his position that crush videos do not present sexual

conduct. However, the California statute that was invalidated by *Brown* covered violent video games regardless of whether the violence was for prurient interests. *Id* at 2732. By contrast, crush videos are created solely for sexual purposes. The violence in crush videos is an integral part of the sex act. Therefore, the reliance upon *Brown* is misplaced.

In ensuring that the amended version of the crush statute resolved the concerns of the Supreme Court, Congress received testimony that obscenity covers unusual deviant acts and that the extreme acts of animal cruelty in crush videos appeal to a specific sexual fetish. Animal Crush Video Prohibition Act of 2010, Pub.L.No. 111-294, § 2(4), 124 Stat. 3177 (2010). Essentially, just because most people do not find the mutilation and destruction of animals sexually motivating does not mean that it is not the intent of the actors and distributors of crush videos to appeal to persons who do find this conduct sexually motivating, making the resulting product obscene.

Justice Stewart wrote "hard-core pornography" is hard to define, but "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964). In order to knowledgeably judge obscenity, it is necessary to see the products which are being alleged to be obscene. The Court has the videos allegedly made by Ashley Richards and Brent Justice and can easily see that these videos are focused on sexual interests, but the Court needs to also know if this intent to gratify sexual desires is consistent across the crush industry in order to balance any existing socially acceptable interest.

The Exhibit to this Amicus Brief contains screen shots of crush videos, of crusher advertising, and of crusher conversations about crush videos. This Exhibit is relevant in answering three questions:

1. whether crush videos are obscene specifically including whether crush videos appeal to a prurient interest and whether they depict sexual conduct;
2. whether there is a compelling interest in regulating the distribution of crush videos if the crush videos are determined to merit some first amendment protection; and
3. whether it is difficult to prosecute the producers of the crush videos for the actual acts of animal cruelty?

The screen shots in the Exhibit result from years of research by stopcrush.org volunteers who search the internet for members of the crush fetish community, infiltrate their social media and document the conduct of the crush fetish community. The Court will see that every single picture, every single advertisement, every single discussion clearly portrays sexual conduct.

In the conversations, look at the "x"s and "o"s reflecting kisses and hugs. Look at the words sexy, fucking, fetish, and mmm. In the pictures, look at the sexy, spiked high-heeled shoes. Look at the garter belts and stockings. Look at the satin shirts, the lace bras, the short shorts, panties revealing buttocks, or no panties at all, and even completely naked women. Notice legs spread suggesting sexual acts, the animal

between the legs in mock sexual acts, and in the few that show the face of the crusher, notice the coy sexual looks. Notice the standard tools of the dominatrix trade – the whips, the collars choking the animals' necks, ropes tying the animals' legs. Look at the acts of riding the animals and shoving things into the animals' genitals and anuses. All of these images are clearly sexual conduct seeking to satisfy the sexual desires of the participants of this specific sexual fetish referred to as crush fetish.

Then, imagine the cries of pain and fear, the gasps as the animals struggle to survive, that are the stock and trade of this particular brutal sexual fetish. Throughout the years of Stopcrush.org research, not one video or discussion has ever indicated anything except an intent to satisfy this deviant sexual fetish. Congress followed Justice Stewart's logic, looked at the crush videos and saw that these videos are obscene. Congress carefully considered the conduct to be regulated, determined it is obscene and drafted a statute that governs only the obscene, unprotected conduct.

The use of Internet security measures, online pseudonyms, masks and cropped photography make it difficult to identify both manufacturers and distributors. Looking at the screen shots in Exhibit A, it is clear that it will be extremely difficult to identify the perpetrators. There is no true identification of the person, generally no unique markings such as tattoos are displayed, and no specific addresses are found on the profiles. Most videos are made in enclosed private nondescript rooms that could be anywhere in the world. When discovered online, crushers will close one web site

or social media site to prevent electronic tracking. These precautionary measures make it difficult for law enforcement to find and arrest the crushers. In addition from the screen shots of the conversations and crusher profile pages, it can be determined that many (if not most) of these videos are made in foreign countries. The United States has no jurisdiction to prosecute the crushers in foreign countries. In order to curb this horrific abuse, the United States must prosecute the distributors found in the United States.

## B. 18 U.S.C. § 48 is Constitutional

Section 48, as amended, regulates only unprotected speech that qualifies as obscenity. The Supreme Court held that the original statute was unconstitutional. *United States v. Stevens*, 130 S.Ct. 1577, 559 U.S. 460, 130 S. Ct. 1577, 176 L.Ed.2d 435 (2010). The amended statute addresses all of the concerns raised in *Stevens*, as follows.

1.

"The statute does not address underlying acts harmful to animals, but only portrayals of such conduct." *Stevens* at 1582. The new statute addresses this primary concern in the clarified definition of animal crush video as follows: "(1) depicts ***actual conduct in which 1 or more living non-human mammals, birds, reptiles, or amphibians is intentionally crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury*** (as defined in section 1365 and

including conduct that if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 and 2242); and (2) is obscene." 18 U.S.C. § 48. Congress made it clear in the amended version that the statute applies to video in which animals are actually harmed rather than video that depicts animal actors who are not actually harmed but acting.

2.

The Supreme Court believed the original statute was overbroad. "We read § 48 to create a criminal prohibition of alarming breadth. To begin with, the text of the statute's ban on a 'depiction of animal cruelty' nowhere requires that the depicted conduct be cruel. That text apples to 'any … depiction' in which 'a living animal is intentionally maimed, mutilated, tortured, wounded, or killed.'" *Stevens* at 1588, quoting the original statute. The amended statute corrects this problem by narrowing the conduct regulated to crush videos and carefully drafting the detailed definition described above that reaches only the animal crush industry and only obscene material.

3.

The Supreme Court was concerned that the text of the original statute, "draws no distinction based on the reason the intentional killing of an animal is made illegal, and includes for example, the humane slaughter of a stolen cow." *Stevens* at 1588. The amended statute addresses this concern by excepting from the regulation: "(A)

customary and normal veterinary or agricultural husbandry practices; (B) the slaughter of animals for food; or (C) hunting, trapping, or fishing." 18 U.S.C. §48.

4.

The Supreme Court was also concerned that in the original statute "depictions of illegal conduct extend to conduct that is illegal in only a single jurisdiction." *Stevens* at 1588-1589. "Those seeking to comply with the law thus face a bewildering maze of regulations from at least 56 separate jurisdictions." *Stevens* at 1589. The amended statute narrowly defines the conduct based upon definitions in federal statutes that apply in all jurisdictions and excludes conduct in the exceptions that is legal in some jurisdictions under state law such as hunting.

## CONCLUSION

For the reasons given in this Brief, Amicus Curiae Stopcrush.org urges this Honorable Court to find that the District Court erred in determining that Section 48 violates the Constitution and therefore to reverse the Court's ruling dismissing the case.

Respectfully submitted,

*/s/ Daphne Pattison Silverman*

_____
Daphne Pattison Silverman
501 North IH-35
Austin, Texas 78702
(512)485-3003
TBN: 06739550

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Amicus Curiae Stopcrush.org was electronically filed and served upon all parties using the CM/ECF system on this the 5th day of September, 2013. All parties are CM/ECF users.

*/s/ Daphne Pattison Silverman*

_____
Daphne Pattison Silverman